J-S75016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: K.R.T., A MINOR
APPEAL OF: R.J.T. A/K/A J.C., FATHER

: IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
:
:
:
:
:
:
:
: No. 1376 EDA 2016

Appeal from the Order April 1, 2016
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s):  No. 2015-9103

BEFORE:  BOWES, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY MOULTON, J.:                 **FILED NOVEMBER 16, 2016**

R.J.T. ("Father"), appeals from the decree entered April 1, 2016, in the Court of Common Pleas of Bucks County, which involuntarily terminated his parental rights to his daughter K.R.T. ("Child"), born in March of 2011.[1]  We affirm.

Child was informally in the care of her paternal great-grandparents from August 29, 2013 until Child was adjudicated dependent and came into the temporary physical and legal care of the Bucks County Children and Youth Social Services Agency ("CYS") on November 1, 2013.  At the time Child was adjudicated dependent, Father was homeless and using heroin.

_____

[1] The trial court also terminated the parental rights of L.E.B. ("Mother") on the same date.  Mother has not filed an appeal and is not a party to the instant appeal.

On March 20, 2015, Child's permanency goal was changed to adoption. On August 31, 2015, CYS filed a petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8).[2]

On March 30, 2016, the trial court held a hearing on the termination petition. At the hearing, the trial court heard testimony from Father, via telephone, and Shawn Rush, a CYS Intensive Services Worker. On April 1, 2016, the trial court entered a decree involuntarily terminating Father's parental rights to Child.

On April 28, 2016, Father timely filed a notice of appeal, together with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father raises two questions on appeal:

> A. Was the Lower Court's Decree based on insufficient evidence and should [Father's] parental rights not have been terminated[?]
>
> B. Was [Father's] incarceration wrongfully used against [Father] in making the determination to terminate his parental rights[?]

Father's Br. at 4.

We consider Father's issues mindful of our well-settled standard of review.

---

[2] The trial court opinion notes that, although the trial court docket reflects that CYS filed the petition on September 2, 2015, that appears to be the date the petition was internally electronically scanned following the August 31, 2015 filing. Opinion, 5/25/2016, at 1 n.3 ("1925(a) Op.").

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis. We have stated:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). The burden is upon the petitioner "to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). This Court need only agree with the trial court's determination under any one

subsection of section 2511(a), along with section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

We conclude that the trial court in this case properly terminated Father's parental rights pursuant to section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To terminate parental rights pursuant to section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the

following elements: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

Our Supreme Court has instructed that incarceration:

> while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 [Pa.C.S.] § 2511(a)(2). [*See In re: E.A.P.*, 944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) (some internal citations omitted).[3]

_____

[3] Further, the Supreme Court stated that:

> If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial

*(Footnote Continued Next Page)*

Father argues that the trial court terminated his parental rights based on insufficient evidence. Father's Br. at 7.[4] Father contends that, though he has been incarcerated for most of the time since CYS filed its petition, he has continued to maintain a relationship with Child, despite the fact that CYS has done nothing to promote reunification. *Id.* Father further argues that CYS filed the petition to terminate his parental rights while he was incarcerated, and CYS failed to meet its burden of proof as to an incarcerated parent. *Id.* We disagree.

We find the following portion of the trial court's opinion relevant to our inquiry with regard to section 2511(a)(2):

> Father, now thirty (30) years of age, is presently incarcerated in Lehigh County Prison and testified at the hearing via telephone regarding his recent history of arrests and incarceration, as follows: In November 2013, when Child came under the care of the Agency, Father was living on the streets with no housing of his own, and he was abusing heroin. He was imprisoned in the summer of 2014 on charges of trespassing, and remained incarcerated for six (6) months, after which he was released to a recovery house in Philadelphia. However, Father incurred a parole violation for drug use and was

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830-31.

[4] As both of Father's questions on appeal arise out of section 2511(a), and can be addressed under subsection 2511(a)(2), we will address them together.

again imprisoned, for two (2) months, in Lehigh County. He was paroled on December 18, 2014, and returned to the recovery house, where he remained clean from substance abuse for six (6) weeks.

On January 23, 2015, Father was arrested again. Due to the successive violations, Father's parole was revoked and he was sentenced to serve his back time in Lehigh County. After he was released on March 16, 2015, Father testified that he was living on the streets and initially avoided substance abuse. On July 31, 2015, however, he was once again arrested in Bucks County, with criminal charges of defiant trespass, false identification and disorderly conduct. He received a sentence of twelve (12) months probation. Since these criminal charges constituted a violation of his Lehigh County parole, he was again imprisoned in Lehigh County on January 22, 2016, and ordered to serve one-half (1/2) of the balance of his Lehigh County sentence.

Father's earliest parole release date is currently August 26, 2016. Father testified that he hopes to be released, once again, to a recovery house for a period of thirty (30) days. After the 30 day period, he intends to move into his father's home and be ready to parent Child at that time.

Father's own father was not present at the hearing, and did not offer testimony in support of his son's representation that he would be a resource for Father's housing and/or other support. Additionally, Father offered no testimony as to his plans as to how he would acquire income or remain drug-free.

1925(a) Op. at 5-6.

Additionally, Father testified on direct examination:

Q. Is there anything else you want to tell the judge?

A. I mean, yeah. I just – I mean, I know I made bad choices, you know. I just – I just, at the time I know I had plenty of chances. At the time I was still in active addiction. I wish I would have taken it more seriously then.

I've been incarcerated. I've been clean now for almost 8 ½ months now. I've been in this program here. It's proved – it's NA and AA all day long. Like I was clean for a bit, like I said, last time I got out and it felt good. It felt great. I was getting what I needed done.

I know what I need to do and I want to do it. I don't want to lose my daughter. I wish I could have one more chance. I don't know if it's possible. I know she needs stability. I'm asking for one more chance.

N.T., 3/30/16, at 25-26.

Shawn Rush of CYS testified that he had serious conversations with Father regarding the importance of permanency for Child. *Id.* at 29-30. Mr. Rush further testified that Father had one visit with Child after the March 20, 2015 goal change, but that shortly after that visit Father dropped out of contact, relapsed, and left the recovery house. *Id.* at 31. Mr. Rush stated that the March 2015 visit was the only visit Father had with Child when he was not incarcerated. *Id.* at 32. Mr. Rush continued:

Q. So [as] 2015 continues on you told him that the Agency was thinking about filing [a petition to involuntarily terminate Father's parental rights] in this case, and eventually the Agency did file.

A. Yes.

Q. Were you still talking to him?

A. Yes.

Q. Did you still tell him that he needed to get things together?

A. Yes.

Q. Did you tell him that the child couldn't remain in limbo forever?

A. Yes.

- 8 -

Q.  He appear to understand that?

A.  Yes.

*Id.* at 32-33.

This Court has stated that a parent is "required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002).  Further, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *Id.* at 337  "[A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id.* at 340.[5]  Instantly, the evidence establishes that Child was removed from Father's care because Father was living on the streets with no housing of his own, and he was abusing heroin.  Rule 1925(a) Op. at 5.  Further, Father's pattern of incarceration and relapse into heroin use supports a conclusion that Father's

_____

[5] This Court stated in *In re Z.S.W.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa.Super. 2008) (quoting *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa.Super. 2003)).  Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004).

continued incapacity, abuse, neglect or refusal to parent could not or would not be remedied.[6]

We find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *See In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004). Accordingly, we find that the trial court's determinations regarding Section 2511(a)(2) are supported by sufficient, competent evidence in the record.

Next, although Father does not discuss Section 2511(b) in the argument section of his brief, we will nonetheless consider this issue. *See In re C.L.G.*, 956 A.2d 999, 1010 (Pa.Super. 2008) (*en banc*) (considering section 2511(b) despite the appellant's failure to challenge the trial court's analysis). Once a trial court determines termination is proper pursuant to section 2511(a), the trial court must also consider how terminating Father's parental rights would affect the needs and welfare of Child pursuant to 23 Pa.C.S. § 2511(b). Pursuant to section 2511(b), the trial court is to consider "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *See In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). "Intangibles such as love, comfort,

---

[6] Father has visits with Child while incarcerated and testified that he wrote Child letters and sent pictures. N.T., 3/30/16, at 25. The trial court, however, considered all the evidence presented and did not abuse its discretion in finding grounds to terminate Father's parental rights under section 2511(a).

security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

Here, the trial court found that:

> Mr. Rush testified that Child, who is now five (5) years old, has been placed in five (5) different foster care placements since she came into the care of the Agency on November 1, 2013. Despite the initial instability of Child's placements, she has been with her current foster family since November 28, 2014. Testimony revealed that Child exhibits some emotional and behavioral issues, that Child receives wrap-around services, and that Child's speech is slightly delayed. Child lives with two (2) older foster care siblings in the foster home, with whom Child has bonded. She is involved, loved and accepted in the foster family. Mr. Rush testified that the foster parents, who have not wavered in their commitment to Child, have expressed an interest in adopting Child.
>
> Furthermore, Father also testified that he is aware that Child is being well cared-for by the foster family, and that he has been provided photographs of Child.
>
> Based on the above, we found the evidence of Child's substantial bond with the foster family to be clear and convincing.

1925(a) Op. at 8-9. The trial court further found:

> The record reveals absence of a significant relationship between Father and Child, the existence of which would result in a negative effect on Child should Father's rights be terminated. The record contains clear and convincing evidence that Father, now and for the reasonably foreseeable future, is not and will not be capable of adequately parenting Child. . . Although we do not doubt that Father loves [Child], when his repeated failure to remedy his parental incapacity is balanced against Child's need for permanence and stability, this Court is constrained to conclude that it would not be in Child's best interest for her life to remain on hold indefinitely. . .

Rule 1925(a) Op. at 9.

The trial court's conclusions are supported by the record. Shawn Rush testified that Child has been living in her current foster home since November 28, 2014. N.T., 3/30/16, at 37. Mr. Rush observed that the foster parents are very affectionate with Child, and Child is affectionate with the foster parents. *Id.* at 38. Mr. Rush stated that the foster parents are "able to manage [Child] very well with love, with structure, with support." *Id.* at 38-39.

Further, our review of the record supports the trial court's conclusion that Father and Child had no significant relationship. Mr. Rush testified that when Child began visits with Father, Father was "like a virtual stranger" to Child, and that later on, Child asked "Do I have to visit with Daddy [Father]?" *Id.* at 57. We have stated, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008).

We find that the competent evidence in the record supports the trial court's determination that there was no bond between Father and Child which, if severed, would be detrimental to Child, and that the termination of Father's parental rights would best serve the needs and welfare of Child. Thus, we will not disturb the trial court's determinations. *See In re M.G.*, 855 A.2d at 73-74.

Accordingly, we affirm the decree terminating Father's parental rights on the basis of section 2511(a)(2) and (b).

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/16/2016